UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| JEFF NAAKTGEBOREN,<br><br>Plaintiff,<br><br>vs.<br><br>VERMEER EQUIPMENT OF SOUTH DAKOTA, INC., A NEBRASKA CORPORATION; KEVIN KLEIN, TOMI KLEIN,<br><br>Defendants. | 4:16-CV-04153-RAL<br><br><br>OPINION AND ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT |

Plaintiff Jeff Naaktgeboren ("Naaktgeboren") sued defendants Vermeer Equipment of South Dakota, Inc. ("VESD"), Kevin Klein ("Klein"), and Tomi Klein ("Tomi"),[1] (collectively "the defendants"), in the Second Judicial Circuit of South Dakota, alleging that in terminating Naaktgeboren's employment, the defendants breached the Stock Restriction Agreement (Count I), breached their fiduciary duty (Count II), and breached the Employment Agreement (Count III). Doc. 1-1. Naaktgeboren also sought declaratory judgment that the covenant not to compete in the Employment Agreement is invalid and unenforceable (Count IV). Doc. 1-1. Defendants removed the case to this Court under 28 U.S.C. §§ 1332, 1441, and 1446. Doc. 1. Naaktgeboren has filed a motion for partial summary judgment on Counts I, III, and IV. Doc. 19. For the reasons stated below, this Court grants Naaktgeboren's motion with respect to Counts I and IV, and denies the motion with respect to Count III.

---

[1] Several members of the Klein family are mentioned in this opinion. Because Kevin Klein is the individual most relevant to the claims in Naaktgeboren's motion, this Court refers to Kevin Klein by his last name, and all other members of the Klein family by their full names.

1

## I. Facts Not Subject to Genuine Dispute

Klein and Tomi are the sole shareholders and directors of Vermeer Equipment of Nebraska, Inc. ("VEN"), a Nebraska corporation, and the owners of VESD, also a Nebraska corporation. Doc. 21 at ¶¶ 4, 8; Doc. 27 at ¶¶ 4, 8. VEN is the exclusive Vermeer dealer for Nebraska, and VESD is the exclusive Vermeer dealer for South Dakota and three counties in Wyoming. Doc. 21 at ¶¶ 5, 8; Doc. 27 at ¶¶ 5, 8. A Vermeer dealer with an exclusive territory has the exclusive right to sell and service Vermeer equipment in the territory, and can seek a portion of revenues from any sales to customers in that territory by other Vermeer dealers. Doc. 21 at ¶¶ 6–7; Doc. 27 at ¶¶ 6–7.

In 1999, VESD had two stores in South Dakota, one in Box Elder and the other in Sioux Falls. Doc. 21 at ¶ 9; Doc. 27 at ¶ 9. The Sioux Falls store was in its infancy with only two employees, little inventory, and a small building. Doc. 21 at ¶ 10; Doc. 27 at ¶ 10. At that time, Naaktgeboren was a store manager for a Vermeer Equipment store in Burnsville, Minnesota, where he had worked the previous fifteen years. Doc. 21 at ¶¶ 1–3; Doc. 27 at ¶¶ 1–3. The Burnsville store had an established customer base and fifteen employees. Doc 21 at ¶ 2; Doc. 27 at ¶ 2. Klein contacted Naaktgeboren about coming to manage VESD. Doc. 21 at ¶ 11; Doc. 27 at ¶ 11. Naaktgeboren accepted the offer after a compensation package was agreed upon consisting of a base salary, a percentage of annual profits, an Employment Agreement, and an opportunity to purchase twenty percent of VESD. Doc. 21 at ¶ 14; Doc. 27 at ¶ 14. Naaktgeboren was the only employee of VESD to be offered an Employment Agreement, which was in part a means to entice him to accept the position. Doc. 21 at ¶ 18; Doc. 27 at ¶ 18.

The Employment Agreement provided that VESD could terminate Naaktgeboren's employment only for cause,[2] and defined "cause" as follows:

> For purposes of this Agreement, Vermeer shall have "cause" to terminate Naaktgeboren's employment hereunder upon (i) the willful failure of Naaktgeboren to substantially perform his duties and continuance of such failure for more than ten (10) days after Vermeer notifies Naaktgeboren in writing that he is failing to substantially perform his duties; (ii) the engaging by Naaktgeboren in serious misconduct which is injurious to Vermeer; (iii) the conviction of Naaktgeboren in a court of proper jurisdiction of a crime which constitutes a felony; or (iv) a breach of any term, condition, agreement, representation or provision of this Agreement.

Doc. 22-2 at 3. In addition, the Employment Agreement mandated certain procedures in order to terminate Naaktgeboren's employment for cause.

> Notwithstanding the foregoing, Naaktgeboren shall not be deemed to have been terminated for "cause" unless and until there shall be delivered to him a copy of a resolution, duly adopted by the Board of Directors of Vermeer, finding that Vermeer has "cause" to terminate Naaktgeboren as contemplated by this section.
>
> . . .
>
> Any termination by Vermeer of Naaktgeboren shall be communicated by a "written notice of termination" (as hereinafter defined) to the other party to this Agreement. For purposes of this Agreement, a "notice of termination" shall mean a notice which shall indicate the specific termination provisions in this Agreement relied upon and shall set forth in reasonable detail the facts and circumstances claimed to provide a basis for termination of employment.

Doc. 22-2 at 3–4. The Employment Agreement also included a covenant not to compete which imposed a three-year restriction on Naaktgeboren following termination of his employment "for any reason whatsoever" that:

> Naaktgeboren shall not directly or indirectly engage in or operate, own, manage, control, join or participate in the ownership, management, operation or control, or consult with respect to or otherwise be connected or associated with any heavy equipment dealer, distributor or manufacturer within the states of South Dakota, Nebraska, [and] Wyoming . . . .

Doc. 22-2 at 5.

---

[2] Under the terms of the Employment Agreement, Naaktgeboren's employment could terminate voluntarily upon notice and upon his death or disability. Doc. 22-2 at 3.

Naaktgeboren exercised his right to purchase twenty percent of VESD, and at some point between March and August of 1999, VESD and Naaktgeboren entered into a Stock Restriction Agreement. Doc. 21 at ¶¶ 20–21; Doc. 27 at ¶¶ 20–21. The Stock Restriction Agreement established that upon termination of employment, the terminated stockholder (Naaktgeboren) would sell all shares of common stock back to the Corporation (VESD). Doc. 22-3 at 4. VESD was required to purchase the shares at a price equal to "book value," which was defined as follows:

> "Book Value" shall mean the total Stockholder's equity as shown on the financial statement certified by the independent public accountants employed by the Corporation determined in accordance with generally accepted accounting principles applied on a consistent basis for financial statement purposes for an "S" corporation divided by the number of shares of common stock issued and outstanding at the time of the calculation.

Doc. 22-3 at 1, 4. Generally accepted accounting principles (GAAP) have never been used to prepare VESD's financial statements, and Naaktgeboren purchased the shares of VESD and received annual distributions based on a valuation derived from a tax basis of accounting. Doc. 27 at ¶¶ 42, 44–45; Doc. 30 at ¶ 42, 44–45.

During Naaktgeboren's tenure, VESD's revenues increased. Doc. 21 at ¶ 33; Doc. 27 at ¶ 33. Nevertheless, on July 15, 2016, Klein and his sons Dusty Klein and Joe Klein traveled to VESD's Sioux Falls area store, which by that time had moved to Tea, South Dakota, and asked Naaktgeboren to resign his position or be terminated. Doc. 21 at ¶ 34; Doc. 27 at ¶ 34; Doc. 22-4 at 26; Doc. 22-8 at 3. Naaktgeboren provided Klein a written statement tendering his resignation, dated July 15, 2016. Doc. 27 at ¶ 50; Doc. 30 at ¶ 50; Doc. 28-1. VESD had drafted a corporate resolution deeming it to have cause to terminate Naaktgeboren, but that resolution had not been formally adopted by VESD's Board of Directors and was not provided to Naaktgeboren on July 15, 2016, or when his employment officially ended on July 31, 2016. Doc. 21 at ¶ 35; Doc. 27 at ¶ 35; Doc. 28-6. VESD also had drafted a notice of termination, dated July 15, 2016, but did not

provide that notice to Naaktgeboren on either July 15 or 31, 2016. Doc. 27 at ¶ 51; Doc. 30 at ¶ 51; Doc. 28-4.

VESD subsequently redeemed Naaktgeboren's shares, but VESD's accountants valued the shares on a tax basis and not using GAAP. Doc. 21 at ¶ 38; Doc. 27 at ¶ 38. VESD's accounting firm, Buckley & Sitzman, LLP, concluded that if Naaktgeboren's shares had been valued in accordance with GAAP, he would have received an additional $9,295.00.[3] Doc. 21 at ¶ 39; Doc. 22-1 at 2.

## II. Discussion

### A. Summary Judgment Standard

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). On summary judgment, the evidence is "viewed in the light most favorable to the nonmoving party." True v. Nebraska, 612 F.3d 676, 679 (8th Cir. 2010) (quoting Cordry v. Vanderbilt Mortg. & Fin., Inc., 445 F.3d 1106, 1109 (8th Cir. 2006)). There is a genuine issue of material fact if a "reasonable jury [could] return a verdict for either party" on a particular issue. Mayer v. Countrywide Home Loans, 647 F.3d 789, 791 (8th Cir. 2011). A party opposing a properly made and supported motion for summary judgment must cite to particular materials in the record supporting the assertion that a fact is

---

[3] The defendants admitted this fact in their response to Naaktgeboren's request for admissions. See Doc. 22-1 at 2. During his deposition, Klein confirmed these admissions. See Doc. 22-4 at 36–37. However, in the defendants' response to Naaktgeboren's statement of facts, they have denied this valuation without providing an explanation for any change in position. Doc. 27 at ¶ 39. The defendants' responses to Naaktgeboren's statement of facts explain that VESD would have incurred additional costs from the preparation and maintenance of financial records of twenty to thirty percent if they were to have employed GAAP methods. Doc. 27 at ¶¶ 46–47. Regardless, the admissions in responses to requests for admissions and Klein's testimony are sufficient to establish that a total of $9,295.00 is at issue in Count I as the difference between the tax-based and GAAP-based stock valuation.

5

genuinely disputed. Fed. R. Civ. P. 56(c)(1); Gacek v. Owens & Minor Distrib., Inc., 666 F.3d 1142, 1145 (8th Cir. 2012). "Mere allegations, unsupported by specific facts or evidence beyond the nonmoving party's own conclusions, are insufficient to withstand a motion for summary judgment." Thomas v. Corwin, 483 F.3d 516, 527 (8th Cir. 2007); see also Reasonover v. St. Louis Cty, Mo., 447 F.3d 569, 578 (8th Cir. 2006) ("Evidence, not contentions, avoids summary judgment.") (citation omitted). Summary judgment is not "a disfavored procedural shortcut, but rather . . . an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).

**B. Naaktgeboren's claims**

This Court must apply state substantive law in diversity jurisdiction cases. Lindholm v. BMW of N. Am., LLC, 862 F.3d 648, 651 (8th Cir. 2017). Both the Employment Agreement and the Stock Restriction Agreement contain a choice of law provision establishing that Nebraska law shall govern the agreements. Doc. 22-2 at 7; Doc. 22-3 at 7. "In South Dakota, a stipulation that provides the governing law is permitted." Dunes Hosp., LLC v. Country Kitchen Int'l, Inc., 623 N.W.2d 484, 488 (S.D. 2001). Naaktgeboren does not resist the application of Nebraska law. Doc. 23 at 6. Therefore, Nebraska law governs both agreements.

**1. Breach of the Stock Restriction Agreement**

Two of Naaktgeboren's claims allege breaches of the Stock Restriction Agreement and the Employment Agreement. "The meaning of a contract and whether a contract is ambiguous are questions of law." Ne. Neb. Pub. Power Dist. v. Neb. Pub. Power Dist., 900 N.W.2d 196, 204 (Neb. Ct. App. 2017). Under Nebraska law, "a court must first determine, as a matter of law, whether the contract is ambiguous." Kasel v. Union Pac. R.R. Co., 865 N.W.2d 734, 738 (Neb.

6

2015). "A contract is ambiguous when a word, phrase, or provision in the contract has, or is susceptible of, at least two reasonable but conflicting interpretations or meanings." Id. However, if the terms of a contract are clear, a court must give them their "plain and ordinary meaning" and "may not resort to the rules of construction." Id.

Naaktgeboren argues that the defendants breached the Stock Restriction Agreement by valuing his shares on an income tax basis when the Agreement requires the use of GAAP. Doc. 23 at 6–7. The defendants assert that the definition of "Book Value" in the Stock Restriction Agreement is rendered ambiguous by the phrase "applied on a consistent basis" because VESD does not use GAAP in the preparation of its financial statements, Naaktgeboren bought shares of VESD in 1999 valued under an income tax basis of accounting, and Naaktgeboren received his annual distributions on that same basis. In addition, the defendants argue that the use of the word "certified" is ambiguous because the definition calls for the financial statements to be "certified by the *independent* public accountants employed by [VESD]" and not certified public accountants. Doc. 22-3 at 1 (emphasis added).

The defendants' arguments are unavailing. The Stock Restriction Agreement is clear and unambiguous in its definition of "Book Value." As defined, "Book Value" is

> [T]he total Stockholder's equity as shown on the financial statement certified by the independent public accountants employed by the Corporation determined *in accordance with generally accepted accounting principles* applied on a consistent basis for financial statement purposes for an "S" corporation divided by the number of shares of common stock issued and outstanding at the time of the calculation.

Doc. 22-2 at 1 (emphasis added). The Stock Restiction Agreement mandates that a terminated shareholder receive "Book Value" for his shares and defines that value as the total stockholder equity determined using GAAP methods and dividing that equity by the total number of shares of common stock issued and outstanding at the time of the valuation. This Court is required to give

7

unambiguous contract terms their "plain and ordinary meaning" and "[t]he fact that the parties suggest opposing meanings of a disputed instrument does not compel the conclusion that the instrument is ambiguous." Kasel, 865 N.W.2d at 738. The plain language of the Stock Restriction Agreement does not change or become ambiguous simply because VESD did not use GAAP methods in the preparation of its financial statements, in the valuation of the shares when Naaktgeboren purchased them, or in calculating annual distributions. The Stock Restriction Agreement at issue here mandates that upon termination, Naaktgeboren was to receive "Book Value" for his shares, and "Book Value" under the clear and unambiguous terms of the Stock Restriction Agreement requires the use of GAAP methods in valuation. The preparation of VESD's financial statements, the valuation of shares when Naaktgeboren purchased his stake in VESD, and the valuation of annual distributions are not governed by the Stock Restriction Agreement, and thus the use or non-use of GAAP methods for those purposes is immaterial to the question of the ambiguity or non-ambiguity of this contract.

VESD's accountants concluded that if Naaktgeboren's total equity had been "determined in accordance with generally accepted accounting principles[,]" Naaktgeboren would have received an additional $9,295.00, which the defendants admitted in responses to the request for admissions and which admissions Klein confirmed during his deposition. See Doc. 22-1 at 2; Doc. 22-4 at 36–37. The defendants presented an argument that overall costs to the company would be higher if VESD employed GAAP in the preparation of all of its financial statements, but that argument makes no difference to the question presented here. The terms of the Stock Restriction Agreement are clear and unambiguous, and it is not disputed that Naaktgeboren would have received an additional $9,295.00 had the defendants calculated the value of stock using GAAP as required by that Agreement. As such, Naaktgeboren is entitled to summary judgment on his claim

for breach of the Stock Restriction Agreement, and summary judgment will enter on that claim in favor of Naaktgeboren for $9,295.00 plus interest.

## 2. Breach of the Employment Agreement

Naaktgeboren argues that the defendants breached the Employment Agreement when they allegedly terminated him without adhering to the procedures mandated in the Employment Agreement. Doc. 23 at 8–12. The Employment Agreement provided that Naaktgeboren "shall not be deemed to have been terminated for 'cause' unless and until there shall be delivered to him a copy of a resolution" from the Board of Directors of VESD finding that they had cause to terminate Naaktgeboren. Doc. 22-2 at 3. The Employment Agreement also required that Naaktgeboren receive a written notice of termination to outline the "facts and circumstances claimed to provide a basis for termination of employment." Doc. 22-2 at 4. Naaktgeboren argues that he was constructively discharged when Klein gave him the choice to resign or be fired, and because he was not provided the resolution and notice, he was not fired for cause under the terms of the Employment Agreement, which constitutes a breach of that agreement. The defendants argue that despite these procedural mandates, they did not breach the Employment Agreement because Naaktgeboren resigned his position.[4] Doc. 26 at 5.

---

[4] Defendants also argue that summary judgment is inappropriate on the breach of Employment Agreement claim because the question of whether good cause exists for the termination of an employee is a question of fact. Doc. 26 at 5 (citing Schuessler v. Benchmark Mktg. & Consulting, Inc., 500 N.W.2d 529, 539 (Neb. 1993)). However, Schuessler dealt with a contract that, it appears, did not have a provision mandating the employee only be fired for cause and a specified procedure to do so, but rather provided for a set term of employment. In that case, the Supreme Court of Nebraska held that "[a] contract for a definite term may not lawfully be terminated prior to the expiration of that term without good cause." Id. at 435. In contrast, the Employment Agreement at issue here contained an explicit "for cause" provision and also deemed the employee to have been fired for cause only after he received notice of the reasons for termination and a resolution from the Board of Directors. Naaktgeboren argues that because he did not receive that notice and resolution, he was not fired for cause under the terms of the Employment Agreement. Therefore, the question framed by this summary judgment motion is whether the defendants breached the terms of the Employment Agreement which required certain procedures be carried out for Naaktgeboren to be terminated for cause.

9

Naaktgeboren is not entitled to summary judgment on breach of the Employment Agreement because there is a genuine dispute as to whether he waived the procedures required under the Employment Agreement when he resigned his position. Under Nebraska law, "a party to a contract may waive the provisions made for his or her benefit." Stauffer v. Benson, 850 N.W.2d 759, 767 (Neb. 2014). The provisions at issue in the Employment Agreement are clearly for Naaktgeboren's benefit, because they provided procedural mandates to which VESD had to adhere in order to terminate his employment. Indeed, Naaktgeboren himself characterizes the provisions as "a form of corporate due process" extended to him in the event that his employers wished to terminate his employment. Doc. 29 at 9. Because these provisions were in place for Naaktgeboren's benefit, Nebraska law makes clear that he was free to waive them. Whether he did so is a material fact in dispute, which precludes granting Naaktgeboren summary judgment on this claim.

It is undisputed that on July 15, 2016, Naaktgeboren was given the option to resign or be fired from VESD. See Doc. 21 at ¶ 34; Doc. 27 at ¶ 34; Doc. 22-4 at 26–27 (Deposition of Klein); Doc. 22-8 at 2–3 (Deposition of Naaktgeboren). It is also undisputed that Klein did not provide Naaktgeboren with a detailed factual basis for why he was being asked to resign or be fired, nor did he provide the corporate resolution and notice of termination to Naaktgeboren at that time or on July 31, 2016, when Naaktgeboren's employment with VESD officially ended. See Doc. 21 at ¶¶ 35–36; Doc. 27 at ¶¶ 35–36. However, during the July 15, 2016 meeting, Naaktgeboren was made aware of the fact that VESD believed that he had engaged in conduct which warranted his termination. According to Naaktgeboren, he was told in a very vague manner that his conduct had been detrimental to the company, as he testified during his deposition:

Q: What do you recall [Klein] saying [at the July 15, 2016 meeting]?

> A: Something to the effect of, you have done some things that have been found detrimental to the corporation. That was the end of that. My question was: what is that?
> Q: What response did you get?
> A: None.

Doc. 22-8 at 4. Meanwhile, the defendants assert that Klein read "all or part" of the following message to Naaktgeboren during the July 15 meeting:

> We met with our attorney yesterday to discuss the findings discovered in the 3rd party investigation. The findings were[:] that there has been a serious misconduct that is injurious to the corporation and violations of the policy/procedures manual.
>
> Effective immediately Jeff will be placed on paid administrative leave through July 31. We will have Kyle figure the book value of Vermeer South Dakota and as soon as the figures are in we will set up a meeting to discuss the valuation and purchase back the stock as per the contract agreement.
>
> The only choice you have left,[sic] is whether we accept your resignation or we terminate your contract. We will need to recover your phone, keys to the shop— Sioux Falls and Box Elder[—] truck, desk and post office and credit card.

Doc. 28-5; Doc. 27 at ¶ 48. Regardless of whose account of the meeting is taken as true, Naaktgeboren was made aware that VESD was asserting that it had cause to terminate his employment, although the basis for this assertion was not described to him with any particularity during that meeting.

Moreover, according to VESD's evidence, Naaktgeboren apparently was aware that a third party, on behalf of the defendants, had conducted an investigation of the VESD workplace based on complaints made against Naaktgeboren by one or more employees of VESD. See Doc. 28-9 (third party organizational cultural audit). The Organizational Culture Report contains some scathing criticism of the Tea store manager, presumably Naaktgeboren. Doc. 28-9. Naaktgeboren chose to tender his resignation on July 15, 2016, even when Klein did not provide him with a more fulsome explanation as to why VESD would fire him if he did not resign. See Doc. 28-1 (Naaktgeboren's resignation letter). As a party to the Employment Agreement, Naaktgeboren was

11

free to waive the procedural requirements mandated for his termination if he felt a resignation was a better option for him based upon reputational or other factors. See Stauffer, 850 N.W.2d at 767 ("We have held that a party to a contract may waive the provisions made for his or her benefit."). Naaktgeboren of course had the right to leave his job at VESD upon giving notice. Doc. 22-2 at 1, 3. A genuine issue of material fact exists at a minimum on whether Naaktgeboren waived the procedures of the Employment Agreement when he chose to tender his resignation rather than be terminated, so summary judgment for Naaktgeboren on his claim for breach of the Employment Agreement is improper.

Naaktgeboren nevertheless argues that his decision to resign was the result of a constructive discharge and that the defendants breached the Employment Agreement by failing to adhere to the procedural requirements set forth therein when forcing him to resign. But Naaktgeboren's constructive discharge argument does not entitle him to summary judgment. Questions of fact remain on whether Naaktgeboren waived any procedural requirements by resigning and, if no waiver occurred, whether the defendants in fact had cause to terminate Naaktgeboren and would have followed the procedural requirements if Naaktgeboren had refused to voluntarily resign.

### 3. Covenant not to Compete

Naaktgeboren also seeks in Count IV a declaratory judgment that the covenant not to compete in the Employment Agreement is unenforceable. The defendants do not oppose this part of the motion for summary judgment, though they object to any claim for damages arising from Naaktgeboren's adherence to the covenant from July 15, 2016, to the present. Doc. 26 at 6–7.

The Supreme Court of Nebraska has held that an employer "is not entitled to protection against ordinary competition from a former employee[,]" and instructed that a valid covenant not to compete must not be injurious to the public, must not impose a restriction greater than

12

reasonably necessary to protect an employer's legitimate interest, and must not be unduly harsh and oppressive on the employee. Am. Sec. Servs., Inc. v. Vodra, 385 N.W.2d 73, 78 (Neb. 1986). The covenant not to compete at issue here seems to impose a restriction greater than reasonably necessary to protect a valid interest of the defendants, and the defendants are not opposing summary judgment on the declaratory judgment claim or seeking to enforce the covenant. Naaktgeboren's complaint does not seek damages on Count IV, but simply a declaration that the covenant not to compete is unenforceable. So summary judgment on Count IV is granted.

### III. Conclusion

For the reasons stated above, it is hereby

ORDERED that Naaktgeboren's motion for partial summary judgment, Doc. 19, is granted for breach of the Stock Restriction Agreement (Count I) such that judgment for $9,295.00 plus interest will enter on that count and that the parties are directed to cooperate to determine the date on which payment should have been made for $9,295.00 more and to calculate interest therefrom. It is further

ORDERED that Naaktgeboren's motion for partial summary judgment is granted for Declaratory Judgment (Count IV) that the covenant not to compete within the Employment Agreement is unenforceable. It is finally

ORDERED that Naaktgeboren's motion for partial summary judgment is denied with respect to Naaktgeboren's claim for breach of the Employment Agreement (Count III).

DATED this 5th day of June, 2018.

BY THE COURT:

_____
ROBERTO A. LANGE
UNITED STATES DISTRICT JUDGE